UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD L. BARRETT,

        Plaintiff,

CASE NO. 05-72341
HON. LAWRENCE P. ZATKOFF

vs.

DETROIT HEADING, LLC, a
Michigan limited liability company,
and CAROLYN HAMPTON,
individually,

        Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on June 8, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on the Motion for Summary Judgment prepared on behalf of Detroit Heading, LLC ("Defendant") and Carolyn Hampton ("Hampton").[1] Plaintiff has filed a response (and Cross-Motion for Summary Judgment (Docket #11)), to which Defendant and Hampton have replied. The Court finds that the facts and legal arguments pertinent to the Motions

---

[1] In his response brief and Counter-Motion for Summary Judgment, Plaintiff objects to the Motion for Summary Judgment filed by Defendant and Hampton as untimely because it was not electronically filed and could not have been filed with the Court prior to the February 6, 2006 deadline for filing dispositive motions. The Court finds the objection ironic, as Plaintiff did not file its Counter-Motion for Summary Judgment until February 27, 2006 (a full 21 days after the dispositive motion cut-off date). Nonetheless, the Motion for Summary Judgment prepared on behalf of Defendant and Hampton was mailed to the Court and Plaintiff on February 6, 2006, even though it was never electronically filed.

    In the interests of justice, the Court has reviewed and considered all of the briefs and exhibits filed by the parties in conjunction with the aforementioned Motions. Defendant and Hampton are, however, ORDERED to cause their Motion for Summary Judgment to be filed electronically within five days of the date of this Opinion and Order, with such filing to be effective as of February 6, 2006.

are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motions be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, the Motion for Summary Judgment filed by Defendant and Hampton is DENIED and Plaintiff's Cross-Motion for Summary Judgment is DENIED.

## II. BACKGROUND

Plaintiff Donald Barrett instituted this action under the Family & Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. ("the FMLA"), following his termination from employment with Detroit Heading, LLC ("Defendant") by the corporate vice president for human resources, Carolyn Hampton ("Hampton"). Hampton terminated Plaintiff's employment because he was absent from work on November 1, 2004. Plaintiff has asserted that he was absent from work on that day due to "hypertensive urgency" related to his high blood pressure.

### A.     Undisputed Facts

Plaintiff began his second employment tenure with Defendant on August 20, 2001, when he was hired as a machine operator. In January 2004, the Defendant implemented a new "No-Fault Attendance Policy" (the "Policy"). Under the Policy, employees are assessed one point for being absent, being tardy by more than one hour or leaving work early. An employee is assessed one-half of a point for being tardy by less than an hour. No disciplinary action is taken until an employee accumulates four points, at which time he/she receives a verbal warning. For each subsequent point, the level of discipline increases, such that five points results in a written warning; six points results in a three-day suspension; and seven points results in termination. If an employee has perfect attendance for 60 days, the employee receives a one point deduction.

The Policy exempts absences due to vacation, holidays, work related injuries, jury duty, approved bereavement, company approved seminars or classes, and leaves of absences granted in accord with applicable law (such as the FMLA). In addition, an employee can avoid points by

calling at least 30 minutes before his shift to request an "emergency vacation day." Emergency vacation day requests may be made up to three times per year, so long as the employee has unused vacation days available.

Based on Plaintiff's attendance history, he was assessed three points on January 12, 2004, the date the Policy became effective. On February 24, 2004, Plaintiff failed to call in or show up for work. Defendant issued Plaintiff a verbal warning because the absence resulted in his fourth point. On April 19, 2004, Plaintiff received his fifth point and a written warning because he called in and said he "won't be in." On April 20, 2004, Plaintiff was assessed his sixth point and received a three-day suspension because he called in and said he "won't be in." On June 19, 2004, Plaintiff completed a 60 day period without any attendance infractions and his point total was reduced to five. On July 22, 2004, Plaintiff was assessed a sixth point and received a three-day suspension after he called and said he "won't be in."

On each of August 23, 2004, September 7, 2004, and September 17, 2004, Plaintiff called in to request an emergency vacation day. On each occasion, an emergency vacation day was granted. Accordingly, as of September 17, 2004, Plaintiff had exhausted his emergency vacation days for 2004. On September 20, 2004, Plaintiff had a point deducted because he had gone 60 days without any attendance infractions (reducing his total to five points once again).

On September 24, 2004, Plaintiff called in to request an emergency vacation day. Plaintiff's request was denied because he had already exhausted his emergency vacation days for 2004. Instead, he was assessed his sixth point and a three-day suspension. In conjunction with that suspension, Defendant provided Plaintiff with a written discipline report (as it did on other occasions). The report stated, among other things, that if Plaintiff had another attendance infraction prior to November 22, 2004, such attendance infraction would result in his termination. Plaintiff did not contest (and has not contested) any of the aforementioned absences, nor has he asserted that any of those absences were related to his high blood pressure.

**B.     Events of November 1, 2004**

Plaintiff's wife, Rose Barrett (a competency-evaluated nursing assistant), has testified that the following events took place on November 1, 2004. Between 1:30 and 2:00 p.m., Rose took Plaintiff's blood pressure, which registered at 180/110. She then called the office of Plaintiff's doctor, Dr. Maribao, and spoke to Rose Hix, the office manager. She told Hix that Plaintiff's blood pressure was 180/110 and Hix relayed that information to Dr. Maribao. When Hix returned to the phone, she told Rose to have Plaintiff take his blood pressure medication and rest in bed. Rose then called Ken Weddington, Defendant's Purchasing Manager, and left him a voicemail asking for an emergency vacation day for Plaintiff because his "blood pressure was up." When Weddington called Rose back, he told her that there was nothing that he could do because Plaintiff had no vacation days available.

Plaintiff did not go into work at the start of his shift at 3:30 p.m. on November 1, 2004. At 4:00 p.m., Rose again took Plaintiff's blood pressure and this time it measured 150/100. On November 2, 2004, Plaintiff went to see Dr. Maribao. Dr. Maribao measured Plaintiff's blood pressure at 130/90, wrote a work excuse for Plaintiff for November 1, 2004, and offered to excuse Plaintiff from work on November 2, 2004 (an offer Plaintiff declined). The work excuse for November 1, 2004, stated that Plaintiff suffered from "hypertensive urgency." The work excuse was then faxed from Dr. Maribao's office to Defendant, although there is some dispute about whether Defendant received that fax.

Before going to work on November 2, 2004, Plaintiff received a call from Hampton. During that conversation, Hampton told Plaintiff that his absence on November 1, 2004, was his seventh point and that his employment was being terminated. Plaintiff did not tell Hampton that he had just been to his doctor's office, did not mention the excuse faxed to Defendant's offices earlier in the day, did not say that his blood pressure was up and did not ask whether his absence would be covered by the FMLA. Plaintiff told Hampton that he understood her position and said "[i]f I'm sick, I'm sick." Plaintiff did not file a grievance over his termination, despite an offer from the local

union official to do so. On June 14, 2005, Plaintiff initiated the current action in this Court.

### III.  LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

### IV.  ANALYSIS

To establish a claim for interference under the FMLA, Plaintiff must present evidence that:

    (1)    He is an eligible employee;

    (2) Defendant was an employer as defined under the FMLA;
    (3) He was entitled to leave under the FMLA;
    (4) He gave Defendant notice of his intention to take leave; and
    (5) Defendant denied him the FMLA benefits to which he was entitled.

*Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). Absences protected by the FMLA cannot be counted against an employee under a "no-fault" attendance policy. 29 C.F.R. § 825.220(c); *Cavin v. Honda of America Mfg.*, 346 F.3d 713, 726 (6th Cir. 2003). A termination based on an absence covered by the FMLA violates the FMLA, even if there are non-FMLA absences which, when joined with the FMLA absence, form the basis for termination. *Cavin*, 346 F.3d at 726.

In this case, Defendant and Hampton do not challenge that Plaintiff was an eligible employee under the FMLA or that Defendant is an employer under the FMLA. Defendant and Hampton contest that Plaintiff suffers from a "serious health condition" and that Plaintiff provided them with notice that he intended to take leave.

**A.** **There is Evidence that Plaintiff had a Serious Health Condition**

A person has a "serious health condition" under the FMLA where he or she has

> (a) . . . an illness, injury, impairment, or physical or mental condition that involves:
>
>   (1) Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, . . . or any subsequent treatment in connection with such inpatient care; or
>
>   (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
>     (I) A period of incapacity (i.e., inability to work, attend school or perform other regular daily duties due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
>       (A) Treatment two or more times by a health care provider . . .; or

> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. §825.114(a)(1)-(2)(I). For the reasons set forth in the ensuing paragraph, the Court finds that Plaintiff has presented evidence that he suffered from "serious health condition" pursuant to 29 C.F.R. § 825.114.

Plaintiff has been seeing Dr. Maribao since at least February 2001. On August 1, 2001, Plaintiff submitted a "post-offer/pre-hire" exam form on which Plaintiff checked the box indicating that he had been treated for "Abnormal blood pressure." On August 12, 2004, Plaintiff was hospitalized overnight due to his hypertension. Plaintiff went to the emergency room at St. John's Hospital after a blood pressure reading of 180/138 at Dr. Maribao's office and was admitted. While at the emergency room, the notes on his physical examination indicate that he had two blood pressure readings: one registered as 117/67 when his vital signs were taken but another that indicated his blood pressure was 170/67 when the heart was assessed. On at least two occasions, Plaintiff did not work and presented a doctor's note asking to excuse Plaintiff from work solely due to "uncontrolled HTN chest pain" (10/25/02 through 11/25/02 and then extended to 12/9/02, 9/8/03 through 9/16/03). In November 2003, Dr. Maribao submitted a note limiting Plaintiff's work to 8 hours/day, 5 days/week for four weeks due to "uncontrolled HTN." In addition, Dr. Maribao saw Plaintiff for hypertension related matters periodically during this time and had Plaintiff on a regimen of blood pressure medications, stressor controls and medical evaluations.

In support of his Counter-Motion for Summary Judgment, Plaintiff argues that the "testimony of Dr. Maribao, who is the *only* expert who will be testifying in this case, unquestionably demonstrates that [Plaintiff's] hypertension, as well as his hypertensive urgency of November 1, 2004, was a 'serious health condition' as defined by 29 C.F.R. § 825.114." Although it is true that Defendant and Hampton have not listed a medical expert for their defense, the Court cannot agree with Plaintiff that the record is void of a genuine issue of material fact as to whether Plaintiff

suffered from a serious health condition.  Most significantly, Dr. Maribao himself (the only expert) has not yet stated that Plaintiff suffers from a serious health condition.  To the extent that he will testify to events which will support such a conclusion, Defendant and Hampton must have the ability to cross-examine him and the fact finder must have the opportunity to evaluate the credibility, truthfulness, etc. of Dr. Maribao.

More significantly, there is a genuine issue of material fact as to whether Plaintiff even suffered from elevated blood pressure sufficient to prevent him working on November 1, 2004. First, despite her testimony in furtherance of this lawsuit that Plaintiff's blood pressure was 180/110 on November 1, 2004, Plaintiff told Dr. Maribao on November 2, 2004, that his blood pressure had been 140/100 the previous day.  Second, Plaintiff has admitted that he has worked with blood pressure as high as 160/110 and that on November 7, 2005, he worked for his subsequent employer even though his blood pressure measured at 163/104 that day.  Accordingly, the Court concludes that the issue of whether Plaintiff suffered from a serious health condition is a question of fact for the jury.

**B.      Notice to Defendant and Hampton**

In this case, Plaintiff's alleged need for the FMLA leave was not foreseeable (as would be the case where there is a scheduled surgery or leave for pregnancy).  In such cases, an employee may have up to two working days to provide notice to the employer, 29 C.F.R. § 825.303(a) (however, such notice should be given as soon as practicable); *Walton*, 424 F.3d at 485, and an employee "does not have to expressly assert his right to take leave as a right under the FMLA." *Cavin*, 346 F.3d at 723. Rather, an employee must provide his employer with enough information to show that he may need the FMLA leave, 29 C.F.R. § 825.303, including providing sufficient information to put the employer on notice that his health condition is serious.

There is sufficient information to put the employer on notice when:

> the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job.

8

*Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004).  "An employee gives his employer sufficient notice that he is requesting leave for an the FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred." *Walton*, 424 F.3d at 486; *Cavin*, 346 F.3d at 723-24.  If the employer lacks sufficient information about the employee's reason for taking leave, the employer has the duty to inquire further to ascertain whether the leave is potentially the FMLA-qualifying. *Cavin*, 346 F.3d at 726.

In this case, the Court finds that there is a genuine issue of material fact as to whether Defendant and Hampton had sufficient notice that Plaintiff was requesting leave for an the FMLA-qualifying condition when Rose Barrett called Defendant and told Weddington that Plaintiff's blood pressure was up and asked for an emergency vacation day.  In a light most favorable to Plaintiff, on August 1, 2001, Plaintiff submitted a "post-offer/pre-hire" exam form on which Plaintiff checked the box indicating that he had been treated for "Abnormal blood pressure."  On multiple occasions, Plaintiff submitted a doctor's excuse for his absence(s) that stated "uncontrolled HTN" as the reason for his absence.  In addition, there is evidence in the record that the office manager at Dr. Maribao's office faxed, on November 2, 2004, to Defendant note which stated "Please excuse [Plaintiff] from work 11/1/04 Return 11/2/04 . . . Hypertensive Urgency."

On the other hand, in a light most favorable to Defendant and Hampton, despite the many occasions where Plaintiff now claims he missed work because of blood pressure related incidents, Plaintiff never suggested that his blood pressure involved a serious health condition.  Several of the excuse slips also included other medical conditions such that it is not possible to determine (even for Dr. Maribao) whether the reason for the excuse from was based on the "uncontrolled HTN" or one of the other conditions.  Moreover, high blood pressure does not, in itself, mean that there is a serious health condition pursuant to 29 C.F.R. §825.114, because high blood pressure may not result in any of the conditions thereunder being satisfied.  In addition, the only information in the record that Plaintiff (or his wife) was instructed by Dr. Maribao not to go into work on November 1, 2004,

9

comes from the testimony of Rose Barrett. There is no record in Dr. Maribao's office file of Plaintiff regarding any call from Rose Barrett or Plaintiff (or any notation regarding November 1, 2004 whatsoever). Further, neither Dr. Maribao nor his office workers remember any call from Plaintiff or Rose Barrett that day. Finally, Defendant and Hampton have testified that they never saw the note from Dr. Maribao's office on November 2, 2004, and no fax confirmation sheet is available.

**C.     Conclusion**

For the reasons stated above, the Court concludes:

(1) Plaintiff has set forth evidence which establishes a prima facie case that his the FMLA rights were violated when he was terminated on November 2, 2004; and

(2) There remain genuine issues of material fact as to whether Plaintiff:

(a) has a serious medical condition pursuant to 29 C.F.R. §825.114; and

(b) provided Defendant and Hampton with sufficient "information . . . to reasonably conclude that an event described in the FMLA" occurred on November 1, 2004; and

(c) proven that Defendant and Hampton have denied him his rights under the FMLA.

Accordingly, the Court hereby denies the Motion for Summary Judgment filed by Defendant and Hampton and the Counter-Motion for Summary Judgment filed by Plaintiff.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, the Motion for Summary Judgment filed by Defendant and Hampton is DENIED and Plaintiff's Cross-Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

                                        s/Lawrence P. Zatkoff
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

Dated:  June 8, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 8, 2006.

                                        s/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290