UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD L. BARRETT,

      Plaintiff,

CASE NO. 05-72341
HON. LAWRENCE P. ZATKOFF

vs.

DETROIT HEADING, LLC, a
Michigan limited liability company,
and CAROLYN HAMPTON,
individually,

      Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on August 9, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on the Motion in Limine filed by Plaintiff (Docket #15) and the Motion in Limine filed by Detroit Heading, LLC ("Detroit Heading") and Carolyn Hampton ("Hampton") (Docket #16). The parties have filed their respective response briefs and Defendant and Hampton have filed a reply brief with respect to the Motion in Limine they filed. The period for Plaintiff to file a reply with respect to his Motion in Limine has expired. The Court finds that the facts and legal arguments pertinent to the Motions are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motions be resolved on the briefs submitted, without this Court entertaining oral arguments. The various motions set forth by the parties are addressed below.

## II. BACKGROUND

On June 14, 2005, Plaintiff Donald Barrett instituted this action under the Family & Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("the FMLA"), following his termination from employment with Detroit Heading by Hampton, the corporate vice president for human resources. On June 8, 2006, the Court issued an Opinion and Order denying the parties' cross-motions for summary judgment. A thorough recitation of the facts and the parties' positions with respect to the case are set forth therein. The Court relies on that recitation and incorporates the same into this Opinion and Order.

## III. ANALYSIS

**A.    Plaintiff's Motions in Limine**

*1.    Plaintiff's Attendance at Prior Employers*

Plaintiff argues that records of his attendance prior to his employment by Detroit Heading are irrelevant to this case. Detroit Heading and Hampton contend that his prior attendance records are relevant for two reasons: (a) to show mitigation of Plaintiff's damages because he claims he would have worked at Detroit Heading for 17 years until his retirement but had not held a job for more than 7 years at any employer since 1988 (and less than 3 years for any other employer), and (b) as habit evidence of his poor attendance.

The Court finds that it would be inappropriate to allow evidence of prior attendance in as habit evidence. The issue in this case is Plaintiff's attendance at Detroit Heading and whether his attendance record at and termination from Detroit Heading intersected in such a manner as to violate Plaintiff's rights under the FMLA. Accordingly, evidence of attendance at prior employers is irrelevant to why he did not report for work at Detroit Heading. In addition, the Court notes that while the number of jobs held by Plaintiff and how long he held such jobs may be relevant to the issue of mitigation of damages, Plaintiff's attendance at such prior jobs is not relevant to the issue of mitigation of damages.

Therefore, for the reasons set forth above, the motion to preclude evidence of Plaintiff's attendance record with prior employers is granted.

2. *Lack of a Union Grievance*

Plaintiff asks the Court to preclude any reference to the fact that he did not file a union grievance in this matter because he was not obligated to do so. 29 U.S.C. § 2617(a)(2); 29 C.F.R. § 825.400(a)(2) (plaintiff has the option of proceeding directly to filing a private lawsuit). Detroit Heading and Hampton argue that Plaintiff's failure to file a grievance is relevant (a) to show that he failed to give them sufficient notice that his November 1, 2004, absence was FMLA qualifying, (b) to his claim of damages because if Plaintiff cared about his job, he would have done everything within his power to keep his job, and (c) not prejudical because there would be no argument that the grievance was a condition precedent to filing this lawsuit and a curative instruction can be given that says as much.

The Court finds that the introduction of evidence of Plaintiff's failure to file a grievance would be more prejudicial and confusing than probative. First, such failure has absolutely no relevance to the issue of whether Plaintiff gave Detroit Heading notice that the absence on November 1, 2004, was FMLA qualifying. Any grievance necessarily would have been filed after he was terminated, by which time notice was no longer relevant. Second, the Court is not convinced that the failure to file a grievance is relevant to the issue of mitigation of damages and no authority has been offered in support of that theory. Third, if the jury is told that Plaintiff could have filed a grievance, it is likely that the jury could hold that against Plaintiff (even with a curative instruction), even though there was no obligation to do so.

For the foregoing reasons, the motion to preclude evidence of Plaintiff's failure to file a grievance is granted.

3. *Prior Convictions*

Plaintiff seeks to exclude evidence of three prior convictions, including a misdemeanor possession of marijuana charge in 1976, misdemeanor retail theft in 1984, and

3

misdemeanor possession of marijuana in November 2004. Detroit Heading and Hampton do not address this issue in their response. The Court agrees with Plaintiff that the first two convictions are inadmissible under Fed. R. Evid. 609. Moreover, as such convictions (and/or the underlying conduct) have nothing to do with the issues in this case, the Court finds that all of them are inadmissible pursuant to Fed. R. Evid. 403.

Accordingly, the motion to exclude evidence of Plaintiff's misdemeanor convictions is granted.

*4. Expiration of Serious Health Condition*

Plaintiff moves the Court to preclude any evidence or testimony that Plaintiff's "serious health condition **abated** by 4:00 p.m. on November 1, 2004" (emphasis added). In formulating his argument, Plaintiff has overlooked that there is both evidence that he was told to stay home by Dr. Maribao (which would mean that he was justified staying home as a matter of law, at least in the Eight Circuit) and evidence that Dr. Maribao may not have actually given that (or any other) directive to Plaintiff on November 1, 2004 . The Court also notes that one of the issues in this case is whether Plaintiff suffered from a serious health condition at all. As such, the Court cannot make a ruling that certain evidence should be precluded that would show that the serious health condition disappeared. Whether or not Plaintiff had a serious health condition and when that condition existed, if at all, is a question for the jury.

Accordingly, the motion to preclude evidence that Plaintiff's serious health condition ended by 4:00 p.m. on November 1, 2004, is denied.

*5. Plaintiff's Absences in August 2004*

Plaintiff moves the Court to exclude evidence that Hampton may have taken actions in August 2004 to ensure that Plaintiff did not lose his job at that time. The alleged actions of Hampton involved Hampton suggesting to Plaintiff that he obtain physician clearance to remain off work long enough to qualify for short-term disability and that, by doing so, avoid being terminated under the Detroit Heading attendance policy. Plaintiff argues that any such actions are irrelevant

to this case because the August 2004 absences were not counted in calculating Plaintiff's absences prior to termination. Plaintiff also argues that there is a substantial likelihood that "litigation of this non-issue will divert the attention of the jury away from the absence at issue in this case - November 1, 2004. . . . [and] create a 'trial within a trial' as to whether plaintiff's absence in August of 2004 was legitimate or not."

Detroit Heading and Hampton argue that this evidence should come in because (1) Plaintiff seeks to hold Hampton individually liable and such evidence demonstrates how Hampton was not out to get him when she terminated his employment, (2) the issue of liquidated damages is based heavily on whether any violations of the FMLA were "in good faith . . . [such that] the employer had reasonable grounds for believing that the act or omission was not a violation" of the FMLA and Detroit Heading and Hampton have a right to show that they acted in good faith to enable Plaintiff to maintain his job, and (3) such evidence will not be confusing because it is clear that Plaintiff's absences in August 2004 are not in dispute with respect to FMLA absences.

The Court finds that the parties agree that the legitimacy of the August 2004 absences are not at issue. As such, the jury is not likely to be confused as to what absence(s) are being litigated here - i.e., the absence on November 1, 2004 (and, as appeared to be at issue in the cross-motions for summary judgment, perhaps the absence on November 2, 2004). The Court also finds persuasive the arguments of Detroit Heading and Hampton that evidence of the August 2004 absences is probative of whether, even if they did violate the FMLA, they acted in good faith in doing so. Moreover, such probative value outweighs any prejudice that might result from permitting such evidence to be admitted.

For the reasons set forth above, the motion to exclude evidence of Plaintiff's August 2004 absences is denied.

**B.     Motions in Limine of Detroit Heading and Hampton**

  *1.     Exclusion of Rose Barrett's Alleged Conversation with Dr. Maribao's Office*

Detroit Heading and Hampton move the Court to exclude as hearsay any testimony

of Rose Barrett regarding the instructions to have Plaintiff stay home she allegedly received from Dr. Maribao's office on November 1, 2004, for Plaintiff to stay home. At issue are statements Rose Barrett claims were made by Rose Hix and/or Dr. Maribao. Fed. R. Evid. 801(c) defines hearsay as:

> [A] statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.

Plaintiff asserts that any such statements would not be hearsay because they would (a) not be assertions and therefore are not statements, (b) not be introduced to prove the truth of the matter asserted, but rather to show the effect on Rose Barrett, the recipient, (c) be admissible to prove *why* Plaintiff did not go to work even if it were inadmissible to prove that he *could* not go to work, and (d) constitute verbal acts, i.e., statements or words that have a particular legal effect or significance.

The Court agrees with Plaintiff. To the extent that Rose Barrett testifies what statements were made to her by Rose Hix and/or Dr. Maribao, such statements would not be to prove the truth of the matter asserted (i.e., that Plaintiff should stay home) but rather what effect such statements had on Rose Barrett. Moreover, Plaintiff has listed Rose Hix and Dr. Maribao as "will call" witnesses for trial. The parties therefore will have an opportunity to question them at trial about what (if anything) they said to Rose Barrett on November 1, 2004.

Accordingly, the motion to exclude any testimony from Rose Barrett as to what Rose Hix and Dr. Maribao said to her on November 1, 2004, is denied.

  *2. Exclusion of Rose Barrett's Testimony that She Called Dr. Maribao's Office*

Detroit Heading and Hampton seek to exclude any testimony from Rose Barrett that she called Dr. Maribao's office on November 1, 2004, because Plaintiff did not "produce any evidence" (i.e., telephone records) that she did so. They argue that allowing such testimony would be more prejudicial than probative and would confuse the jury. The Court finds this motion to be frivolous. As Plaintiff recognized, "the defendants would have this Court believe that before a party can introduce otherwise admissible evidence at trial, there must first be a second *additional* form

of evidence corroborating the proffered testimony or evidence." Rose Barrett can testify as to what she did on November 1, 2004. The motion to exclude Rose Barrett's testimony that she called Dr. Maribao's office on November 1, 2004, is denied.

       *3.*      *Evidence of Tingling Sensation and Pressure*

Detroit Heading and Hampton assert that Plaintiff testified at his deposition that the reason he did not go back to work at 4:00 p.m. on November 1, 2004 (after his blood pressure apparently had dropped) was that he had a "tingling sensation" and "pressure" in his head and neck. Detroit Heading and Hampton assert that Plaintiff mentioned these symptoms/conditions for the first time at his deposition, long after his termination. As such, they argue that his post-termination claims should be excluded. *McFall v. BASF Corp.*, 406 F.Supp.2d (E.D. Mich. 2005) (Edmunds, J.).

The Court agrees that such evidence would not properly be admissible for purposes of Plaintiff showing that Detroit Heading and Hampton had notice of Plaintiff's condition for FMLA purposes. The use of the word "employee" in the FMLA illuminates a significant limitation on the timing of the required notice. Notice must be provided during the employment relationship, not after the employee has been terminated. *See Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998); *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir. 1999). Thus, for purposes of FMLA notice, Plaintiff's post-termination claims of health problems, including all of those made during his deposition, are irrelevant. What is relevant for purposes of FMLA notice are Plaintiff's statements to Detroit Heading and Hampton during the course of his employment relationship.

On the other hand, as Plaintiff argues, Detroit Heading and Hampton are likely to claim that Plaintiff should have returned/gone to work on November 1, 2004, when his blood pressure had gone to levels at which he had previously worked. In the event that Detroit Heading and Hampton do so, the Court agrees with Plaintiff's contention that he should be able to offer rebuttal testimony that he endured such symptoms/conditions at that time. Moreover, Detroit Heading and Hampton will have multiple opportunities to argue to the jury whether testimony about

7

Plaintiff's alleged condition at 4:00 p.m. on November 1, 2004, afforded them notice.

Accordingly, for the reasons set forth above, the motion to exclude Plaintiff's testimony that he experienced tingling and pressure in his head and neck on November 1, 2004, is denied.

*4.  Possible Consequences of Untreated High Blood Pressure*

Detroit Heading and Hampton seek to exclude any testimony from Dr. Maribao (and others) about the possible conditions (i.e., heart attack, stroke, aneurysm) which could develop if Plaintiff's high blood pressure was left untreated. They argue that Plaintiff did not have any of those conditions, and the fact that Plaintiff could one day suffer a heart attack, stroke or aneurysm is irrelevant to whether Plaintiff had a serious health condition on November 1, 2004, or that he provided sufficient notice of his condition. As such, they claim that testimony about any possible conditions would be more prejudicial than probative.

As Plaintiff argues, however, Detroit Heading and Hampton have not agreed that Plaintiff suffers from a serious health condition. Absent such a stipulation, Plaintiff will need to establish before the jury whether his high blood pressure constitutes a serious health condition. The Court finds that the consequences of failing to treat someone with Plaintiff's blood pressure to be probative on whether or not a jury would find that a person with Plaintiff's blood pressure has a serious health condition. For the reasons stated, the motion to exclude evidence of the conditions which could develop if a person's high blood pressure is left untreated is denied.

*5.  Evidence of Non-Economic Damages*

The Sixth Circuit has recently held that a plaintiff cannot recover for mental and/or emotional distress damages. *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1007 (6th Cir. 2005). As Plaintiff recognizes, this precedent currently precludes him from recovering for non-economic damages in this Court, as the Court is compelled to follow the Sixth Circuit precedent. Accordingly, the motion to exclude evidence of non-economic damages is granted.

## IV.  CONCLUSION

Accordingly, and for the reasons set forth above, the Motion in Limine filed by Plaintiff is GRANTED IN PART and DENIED IN PART and the Motion in Limine filed by Detroit Heading and Hampton is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff<br>
LAWRENCE P. ZATKOFF<br>
UNITED STATES DISTRICT JUDGE

Dated:  August 9, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 9, 2006.

s/Marie E. Verlinde<br>
Case Manager<br>
(810) 984-3290

9