UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD L. BARRETT,

        Plaintiff,

CASE NO. 05-72341
HON. LAWRENCE P. ZATKOFF

vs.

DETROIT HEADING, LLC, a
Michigan limited liability company,
and CAROLYN HAMPTON,
individually,

        Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on June 7, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on (1) Plaintiff's Motion for Attorney Fees, Costs and Interest and Motion for Entry of Judgment (Docket #32), (2) the Motion for Judgment as a Matter of Law filed by Detroit Heading, LLC ("Defendant")[1] (Docket #35),[2] and (3) Defendant's Motion for Stay of Decision on Plaintiff's Motion for Attorney Fees and Entry of Judgment (Docket #36). With respect to each motion, at least one response has been filed. The respective replies also have been filed or the deadline for filing the same has passed. The Court finds that the facts and legal arguments pertinent to the motions are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2),

---

[1] As the jury cleared Carolyn Hampton of any liability in this case, all references to Defendant in this Opinion and Order shall refer only to Detroit Heading, LLC.

[2] In the interests of justice, Plaintiff's unopposed Emergency Motion for Additional Time to File Response to Defendant's Motion for Judgment as a Matter of Law (Docket #38) is GRANTED.

it is hereby ORDERED that the motions be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, (1) Plaintiff's Motion for Attorney Fees, Costs and Interest and Motion for Entry of Judgment is GRANTED IN PART and DENIED IN PART, (2) the Defendant's Motion for Judgment as a Matter of Law is DENIED, and (3) Defendant's Motion for Stay of Decision is DENIED.

## II. BACKGROUND

Plaintiff instituted this action under the Family & Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. ("the FMLA"), following his termination from employment with Defendant. Defendant, through its corporate vice president for human resources, Carolyn Hampton ("Hampton"), terminated Plaintiff's employment because he was absent from work on November 1, 2004. Defendant believed that absence gave Plaintiff seven points and required termination of employment under the Defendant's No-Fault Attendance Policy. Plaintiff has asserted that he was absent from work on that day due to "hypertensive urgency" related to his high blood pressure, and that such absence is protected by the FMLA.

On June 8, 2006, the Court issued an Opinion and Order denying the parties' cross-motions for summary judgment because there were genuine issues of material fact as to whether Defendant and/or Hampton violated the FMLA in terminating Plaintiff. This case was tried before a jury on September 12, 13, 14, and 15, 2006, and the jury returned a verdict finding:

(1) Plaintiff had a serious health condition;

(2) Hampton did not violate the FMLA;

(3) Plaintiff provided sufficient notice to Defendant that his absence on November 1, 2004, was for a potentially FMLA qualifying reason;

(4) Defendant violated the FMLA by terminating Plaintiff's employment on November 2, 2004;

(5) Defendant acted in good faith when terminating Plaintiff;

(6) Plaintiff was entitled to $45,000 in damages for the period from November 2, 2004, to the date of verdict; and

(7) Plaintiff would not suffer any future damages as a result of his termination.

2

## III. STANDARD OF REVIEW

Judgment as a matter of law is appropriate where, after a party has been fully heard on an issue, there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. Fed. R. Civ. P. 50(a); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 236 (6th Cir. 2003). When reviewing a motion for a judgment as a matter of law based on insufficiency of the evidence, the court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury; rather, it must view the evidence in a light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). The motion should be granted "only if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ." *Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 426-27 (6th Cir. 2004) (quoting *LaPerriere v. Int'l Union UAW*, 348 F.3d 127, 132 (6th Cir. 2003)).

## IV. MOTION FOR JUDGMENT AS A MATTER OF LAW

In the Court's June 8, 2006, Opinion and Order, the Court set forth many "facts" based on the deposition testimony of witnesses and documents attached as exhibits to the parties' briefs. As noted above, the Court then denied the parties' cross-motions for summary judgment because the material facts of this case, and the conclusions to be drawn from them, were in dispute. At trial, most of what had been offered as deposition testimony became trial testimony as witnesses took the stand, and the documents attached as exhibits in support of the parties' motions for summary judgment were introduced as trial exhibits. When comparing the facts presented to the Court on the summary judgment motions and the evidence introduced at trial, the Court notes that nothing materially new or different was introduced as evidence at trial.

In deciding Defendant's Motion for Judgment as a Matter of Law, the Court must view the evidence in a light most favorable to Plaintiff and give Plaintiff the benefit of all reasonable inferences. *Arban, supra*. Viewing the evidence in that light, the Court finds that the verdict

rendered by the jury could reasonably have been reached because "disputed issue[s] of fact exist[ed] on which reasonable minds could differ." *See Karam, supra.*

**A.      Defendant's Arguments**

In its Motion for Judgment as a Matter of Law, it appears that Defendant is again contending that Plaintiff did not suffer from a serious health condition (Defendant listed it as an "Issue Presented" in one portion of the Motion (but not the Table of Contents) and, in its brief in support of the instant Motion, Defendant states "high blood pressure does not, in itself, mean that there is a serious health condition"). Defendant next argues that there is no evidence Plaintiff provided Defendant with sufficient notice that he intended to take FMLA leave. Finally, Defendant makes a throwaway statement that "[i]f the Plaintiff did not provide sufficient notice to Defendant Carolyn Hampton in her individual capacity he could not, as a matter of law, have provided sufficient notice to Defendant Carolyn Hampton in her representative capacity as Vice President of the Defendant Detroit Heading." The Court briefly addresses all of Defendant's contentions, recognizing that the first two arguments are virtually identical to those made on summary judgment. As such, the Court's analysis of those arguments looks substantively similar to that in the June 8, 2006, Opinion and Order.

**B.      There is Evidence that Plaintiff had a Serious Health Condition**

A person has a "serious health condition" under the FMLA where he or she has

>   (a) . . . an illness, injury, impairment, or physical or mental condition that involves:
>
>   >   (1)   Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, . . . or any subsequent treatment in connection with such inpatient care; or
>   >
>   >   (2)   Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>   >
>   >   >   (I)   A period of incapacity (i.e., inability to work, attend school or perform other regular daily duties due to the serious health condition,

4

> treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider . . .; or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. §825.114(a)(1)-(2)(I). For the reasons set forth in the ensuing paragraph (all of which was evidence introduced at trial), the Court finds that there was sufficient evidence presented at trial from which the jury could conclude that Plaintiff suffered from "serious health condition" pursuant to 29 C.F.R. § 825.114.

Plaintiff has been seeing Dr. Maribao since at least February 2001. On August 9, 2001, Plaintiff submitted a "post-offer/pre-hire" exam form on which Plaintiff checked the box indicating that he had been treated for "Abnormal blood pressure." On August 12, 2003, Plaintiff went to the emergency room at St. John's Hospital after a blood pressure reading of 180/138 at Dr. Maribao's office and was hospitalized overnight due to his hypertension. While at the emergency room, the notes on his physical examination indicate that he had two blood pressure readings: one registered as 117/67 when his vital signs were taken but another that indicated his blood pressure was 170/67 when the heart was assessed. On at least two occasions, Plaintiff did not work and presented a Defendant with a doctor's note that excused Plaintiff from work solely due to "uncontrolled HTN chest pain" (for the period from 10/25/02 through 11/25/02, which was then extended to 12/9/02, and for the period from 9/8/03 through 9/16/03). In November 2003, Dr. Maribao submitted a note limiting Plaintiff's work to 8 hours/day, 5 days/week for four weeks due to "uncontrolled HTN." In addition, Dr. Maribao saw Plaintiff for hypertension related matters periodically from 2001-2004 and had Plaintiff on a regimen of blood pressure medications, stressor controls and medical evaluations. Dr. Maribao, the only doctor or expert who testified in this case, testified that Mr.

Barrett's hypertension constituted a "serious health condition." Finally, as to whether Plaintiff suffered from elevated blood pressure sufficient to prevent him working on November 1, 2004, Mrs. Barrett testified that Plaintiff's blood pressure was 180/110 on November 1, 2004.

Based on the foregoing, the Court concludes that there was legally sufficient evidence presented at trial such that a reasonable jury could find that Plaintiff suffered from a serious health condition on November 1, 2004. *See* Fed. R. Civ. P. 50(a); *Hamad, supra.*

**C.     Sufficient Notice to Defendant that Absence was Covered by the FMLA**

There is sufficient information to put the employer on notice that an absence is covered by the FMLA when:

> the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job.

*Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004). "An employee gives his employer sufficient notice that he is requesting leave for an the FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred." *Walton*, 424 F.3d at 486; *Cavin*, 346 F.3d at 723-24. If the employer lacks sufficient information about the employee's reason for taking leave, the employer has the duty to inquire further to ascertain whether the leave is potentially the FMLA-qualifying. *Cavin*, 346 F.3d at 726.

In this case, the Court finds that the evidence introduced at trial enabled a jury to find that Defendant had sufficient notice that Plaintiff was requesting leave for an FMLA-qualifying condition when Rose Barrett called Defendant, told Weddington that Plaintiff's blood pressure was up and asked for an emergency vacation day. The Court also concludes that based on the evidence introduced at trial, the jury could have found that Defendant did not make a sufficient effort to inquire further as to the reason for Plaintiff's absence.

In a light most favorable to Plaintiff, on August 1, 2001, Plaintiff submitted a "post-offer/pre-hire" exam form on which Plaintiff checked the box indicating that he had been treated for

"Abnormal blood pressure." On multiple occasions, Plaintiff submitted a doctor's excuse for his absence(s) that listed "uncontrolled HTN" as the reason for his absence. In addition, there is evidence in the record that the office manager at Dr. Maribao's office faxed Defendant a note on November 2, 2004, which stated "Please excuse [Plaintiff] from work 11/1/04 Return 11/2/04 . . . Hypertensive Urgency."

Defendant's employees acknowledged that spouses could provide notice of the need for leave under the FMLA and it was not necessary for Plaintiff to do it personally. Defendant's employees (and Plaintiff) also testified that Weddington (or Ron Ritchie, vice president of operations) was the person an employee was to call if he could not come to work because of an illness. The employee was to leave a voice mail if Weddington or Ritchie did not answer the phone. Weddington testified that Rose Barrett told him Plaintiff's "blood pressure was high," told him what the blood pressure levels were and that he could call her back if he had any questions. Neither Weddington nor Hampton asked Plaintiff or Rose Barrett for a note from Plaintiff's physician. Defendant suggests that it, through Weddington and Hampton, "placed telephone calls to and made inquiries of Mr. and Mrs. Barrett, respectively." As noted above, Rose Barrett told Weddington, on the voicemail and directly, that Plaintiff's blood pressure was up. Defendant does not argue (and the trial testimony would not support a finding) that Hampton called and asked about the blood pressure at all. In fact, she testified that she never asked Plaintiff why he was absent from work. Accordingly, the evidence introduced at trial, when considered as a whole, was sufficient to enable the jury to reasonably find (a) Plaintiff provided Defendant with sufficient notice that his absence was covered by the FMLA, and (b) Defendant did not make a sufficient effort to inquire further as to the reason for his absence.

**D.** **Effect of Verdict in Favor of Hampton Individually**

Defendant claims that the verdict against Defendant is inconsistent with the verdict in favor of Hampton. Although an argument could be made for that position because Hampton was the corporate vice president for human resources, that is not the only conclusion which can be reached.

7

As Plaintiff argues, it is possible from the evidence introduced at trial that the jury could have concluded that Hampton never received sufficient notice of Plaintiff's high blood pressure. Rose Barrett left a voicemail for Weddington and Weddington called her back; both of those "conversations" resulted in Weddington being told that Plaintiff's blood pressure was up. Hampton testified that she never discussed with Rose Barrett, Plaintiff or Weddington the reason for Plaintiff's absence on November 1, 2004. Hampton also testified that she never received the fax from Dr. Maribao's office. Accordingly, there was no evidence at trial that expressly demonstrated that Hampton knew that Plaintiff's blood pressure was up, yet there was evidence that agents of Defendant were aware of Plaintiff's condition.

For the foregoing reasons, the Court concludes that the jury reasonably could have found Defendant liable but also ruled in favor of Hampton.

## V. MOTION FOR STAY

In this case, one of the key disputed issues was whether Rose Barrett placed a call to Dr. Maribao's office on November 1, 2004, such that Dr. Maribao could have ordered Plaintiff to stay home from work that day because of high blood pressure. Up to and at trial, Plaintiff maintained that he did not recall his providers of cellular or land line telephone service as of November 1, 2004. When Plaintiff filed his Motion for Attorney Fees and Entry of Judgment, discussed below, Plaintiff sought attorney fees for discovery of AT&T phone records, among other things. When Defendant received Plaintiff's Motion for Attorney Fees, Defendant filed a Motion for Stay of Decision on Plaintiff's Motion for Attorney Fees and Entry of Judgment. Defendant believed that it was possible, or even likely, that Plaintiff's position that he did not recall who his phone service providers were would be exposed as false and deceitful. Defendant asked the Court to delay its consideration of the Motion for Attorney Fees and entry of judgment until (a) Defendant received complete responses to subpoenas they had issued to phone companies, and (b) Defendant filed a supplemental brief.

8

Since Defendant filed the Motion to Stay, several things have occurred and one key event has not occurred. First, Plaintiff filed a response to the Motion for Stay. Then, Plaintiff filed a supplemental response to Defendant's Motion for Stay. Defendant never filed a supplemental brief regarding the Motion for Stay, but Defendant did file a Supplemental Response to Plaintiff's Motion for Attorney Fees and Entry of Judgment. In that Supplemental Response, Defendant clearly had obtained the responses to the subpoenas it sent out to the phone company(ies).

Based on (1) the passage of time since Defendant filed the Motion for Stay, (2) the fact that Defendant has received responses from the phone company(ies) to which it issued subpoenas, and (3) the content of Defendant's Supplemental Response to Plaintiff's Motion for Attorney Fees and Entry of Judgment, the Court finds that the Motion for Stay has been rendered moot. Accordingly, the Motion for Stay is hereby DENIED.

## VI. MOTION FOR ATTORNEY FEES AND ENTRY OF JUDGMENT

Plaintiff seeks entry of a judgment totaling $128,044, which consists of (a) the jury verdict of $45,000.00, (b) $70,600.00 for attorney fees (282.4 hours of attorney work at $250.00 per hour), (c) costs in the amount of $4,713.18, and (d) pre-judgment interest in the amount of $7,731.28 (representing the prevailing prime rate, compounded annually). Defendant opposes the payment of any pre-judgment interest and attorney fees or costs. In the alternative, Defendant asks the Court to reduce the amounts claimed by Plaintiff.

**A.  No Blanket Denial of Attorney Fees and Costs**

Defendant first asks the Court to deny Plaintiff's request for attorney fees and costs because of Plaintiff's improper conduct in concealing documents and advancing arguments known to be without factual support at trial. Defendant has argued that Plaintiff consistently stonewalled and misled Defendant regarding the issue of whether Rose Barrett called Dr. Maribao's office on November 1, 2004. Until the post-trial motions in this case were filed, Plaintiff (and his wife and his counsel) maintained that Plaintiff and his wife could not recall who their phone service providers

9

were in November 2004. Plaintiff took this position during discovery (responding to interrogatories) and testified as much during trial under cross examination.

This matter was revived during post-trial motions when some of the attorney fees sought by Plaintiff were for "preparation of Subpoena for phone records from AT&T" and "received/reviewed letter from AT&T re: absence of any records for Detroit Heading or Textron" on March 10, 2006 and March 27, 2006, respectively. During discovery, Plaintiff did not provide Defendant with a copy of the subpoena or the response. Ironically, Plaintiff's counsel had chastised Defendant's counsel only one month earlier for failing to immediately provide Plaintiff with a subpoena Defendant had issued to, and a response to the subpoena Defendant had received from, Dr. Maribao. Defendant argues that the failure to disclose the AT&T Subpoena was purposeful and deceitful, particularly as the issue of which party should be assessed fault for determining/proving that Rose Barrett called Dr. Maribao's office on November 1, 2004, was fiercely contested at trial. In a stretch of further irony, however, as of February 2006 (*i.e.,* prior to the date Defendant now complains Plaintiff failed to provide information regarding Rose Barrett's call to Dr. Maribao), Defendant had in its possession evidence that Dr. Maribao's office had called Plaintiff's home on November 1, 2004.

In short, the parties are currently engaged in a mudslinging match in which neither party began with or now has clean hands. The Court does not find that either party is less at fault than the other, nor does it find either more at fault than the other. The Court shall not, however, base its decision to award (or not award) attorney fees and costs in this case on the uncivil discourse of the parties, with one exception. Plaintiff desires to supplement the attorney fees and costs to which he is entitled to reflect his attorney's efforts to rebut Defendant's Motion for Stay. The Court will not recognize or reward Plaintiff for those efforts because, but for Plaintiff's conduct (in part), there would have been no need for Defendant to file the Motion for Stay or for Plaintiff's counsel to exert time responding to it. As such, the Court will consider only the attorney fees and costs claimed through October 26, 2006, the date upon which Plaintiff filed his reply brief regarding the Motion for Attorney Fees and Entry of Judgment. The Court now turns to the merits (*i.e.*, the

reasonableness) of Plaintiff's request for attorney fees and costs.

**B.      Reasonableness of Attorney Fees and Costs**

  *1.     Legal Standard*

In any action or proceeding to enforce a provision of 29 U.S.C. § 2617, "the court in such action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee . . . and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3). In determining what constitutes a reasonable fee, the Supreme Court has held that the starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is known as the lodestar method. The Supreme Court has further held that the fee applicant must produce evidence "to justify the reasonableness of the requested rate." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). In *Northcross v. Board of Education*, the Sixth Circuit held that the district court should look to the prevailing market rate to determine the reasonableness of the requested rate. *See Northcross v. Bd. of Educ.*, 611 F.2d 624, 638 (6th Cir. 1979). The Sixth Circuit has also stated:

> Generally, a "strong presumption" favors the prevailing lawyer's entitlement to his lodestar fee. Accordingly, "modifications are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts.'"

*Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000).

  *2.     Requested Amount*

Plaintiff originally requested attorney fees in the amount of $75,295.00 and costs of $4,713.18. The request for attorney fees was based on 273.8 hours of work by Plaintiff's attorney, Joey Niskar, at $275.00 per hour. In support of that application, Mr. Niskar provided a sworn declaration and a client billing sheet that details the hours he worked on this case. In filing his reply brief, Plaintiff modified his request for attorney fees to $70,600.00, which was based on a rate of $250.00 per hour and 282.4 hours worked (including the additional 8.6 hours in preparing the reply

11

brief).

*3.    Plaintiff's Hourly Billing Rate was Unreasonable*

Defendant challenges the attorney fees as being excessive for three reasons. First, Defendant argues that because Plaintiff did not recover against Hampton (or get punitive damages), he should not recover the full amount requested. The Court recognizes that Plaintiff did not recover on all of his claims, but the claims in this case arose out of a "common core of facts" and were based on the same legal theories. As such, the time expended by Mr. Niskar would have been essentially the same even if there were no claims against Hampton. The Court therefore declines to reduce Mr. Niskar's hours on that basis. *See Gross v. Perrysburg Exempted Village School Dist.*, 306 F.Supp.2d 726, 741 (N.D. Ohio 2004); *Moore v. Freeman,* 355 F.3d 558 (6th Cir. 2004).

Defendant next argues that Plaintiff only recovered 8.5% of the amount he asked the jury to award him. The Court has reviewed its notes from the trial and cannot agree. Plaintiff asked for back pay of about $77,000 and requested that future damages be awarded but did not ask for a fixed figure. Defendant also argues that attorney fees should not be awarded because Plaintiff was offered more during settlement discussions than he was awarded by the jury. Defendant does not cite any authority for this proposition, however, and the Court is not familiar with that legal proposition.

Finally, Defendant beseeches the Court to reduce the amount of attorney fees and costs requested by the Plaintiff because the hourly rate was excessive and unreasonable. On this point, the Court agrees with Defendant. Specifically, the Court disagrees with Plaintiff that an hourly rate of $275 (or $250) is reasonable. The starting point for the Court's analysis involves finding a reasonable hourly rate by looking to the prevailing market rate. *See Northcross*, 611 F.2d at 638. It is Plaintiff's burden to justify the reasonableness of the requested rate. *See Hensley*, 461 U.S. at 433. In *Blum v. Stevenson*, the Supreme Court explained:

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory

>evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to-for convenience-as the prevailing market rate.

465 U.S. at 896, n.11.

In the present case, Plaintiff submitted an affidavit from attorney Michael Pitt, "one of the preeminent employment attorneys in Michigan," who declares that $275/hour is within the range for a reasonable hourly rate. Plaintiff also argues that a judge in the U.S. District Court, Western District of Michigan, recently awarded an 8th year associate $300/hour and a partner $325/hour in an ERISA case. Finally, Plaintiff argues that $275/hour is within the range of a customary hourly fee in the community. As a practicing attorney of nearly 10 years at the time of the trial, Plaintiff's counsel believes his rate should be that of a higher tier associate (or partner) at a law firm, who bill at rates of $230/hour to $365/hour. *See* Michigan Lawyers Weekly, December 2006 Largest Law Firms Directory. Plaintiff suggests his rate of $275 (or $250) is below the mean.

Although Plaintiff has offered reasons that $275 (or $250) per hour might be reasonable in some instances, the Court finds that Plaintiff has not satisfactorily shown that his attorney's billing rate is in line with the prevailing market rate. First, as Plaintiff acknowledged in his reply, he listed his billing rate at $250 per hour in the Joint Final Pre-Trial Order. Second, in arriving at the rate of $230 to $365 per hour, Plaintiff's counsel looked at the largest law firms in Southeast Michigan. As such, the billing rates in that survey are much higher than the billing rates for associates, or even partners, at firms comparable to the firm at which Plaintiff works.

For example, according to the State Bar of Michigan, Michigan attorneys with 5-9 years of experience, like Mr. Niskar, charge an average of $168.00 per hour and those with 10-14 years experience charge an average of $170 per hour. *See* State Bar of Michigan 2003 Economics of Law Practice at 25. According to the Michigan Bar survey, the average billing rate for attorneys in general practice was $156.00 per hour, and the average billing rate for attorneys representing the management side of employment cases was $176 per hour (there was no entry for plaintiff side

employment cases). *Id.* Other relevant data from the Michigan Bar survey reveals that the average billing rate for attorneys with at least 5 years experience in South Oakland County was $175 per hour, the average billing rate for attorneys with at least 10 years experience in the same area was $185 per hour, and the average billing rate for all attorneys in Oakland County (south of Big Beaver Road) was $193 per hour. *Id.* at 26

For these reasons, and also based on the Court's own experience with the billing practices within the Eastern District of Michigan, the Court finds that Plaintiff's requested hourly billing rate is unreasonable. The Court will award Plaintiff's attorney at rate of $170.00 per hour pursuant to the average rates of the Michigan Bar Survey and pursuant to the Court's own experience in these matters. The Court finds this fee reasonable in light of the prevailing market rate, the nature of the issues involved in this suit, the result obtained, and counsel's performance.

    *4.  Number of Hours Expended by Plaintiff's Attorney was Excessive*

Defendant next challenges the number of hours Plaintiff's attorney expended on the case. It is the Court's role to review billing hours in order to determine whether these hours were "reasonably expended." *See Hensley*, 461 U.S. at 433. While hourly rates for experienced attorneys are supposed to reflect experience, the experienced attorney who is being compensated at a higher rate than the inexperienced attorney is expected to perform legal work in an "expedited manner." *See Lebron v. Washington Metro. Area Transit Auth.*, 665 F.Supp. 923, 927-29 (D.D.C. 1987). Furthermore, attorneys should not be awarded fees for work that is not "reasonably expended on the litigation." *See Webb v. Bd. of Educ*., 471 U.S. 234, 242 (1985).

In light of these principles, the Court agrees with Defendants that certain hours were not reasonably expended. Defendant first challenges Plaintiff counsel's billing in increments of .2 hours. The Court agrees with Plaintiff that .2 hours is a standard billing practice in the industry, however, in assessing attorney fees, the Court is to award attorney fees only for the time and work that is reasonably expended by Plaintiff's counsel. Therefore, the Court does not believe that it is appropriate to mandate that Defendant pay Plaintiff attorney fees for every .2 increment billed by

14

Plaintiff's counsel simply because that is the manner in which Plaintiff's counsel elected to enter his time. Rather, the Court shall award attorney fees only on such time as was reasonably expended by Plaintiff's counsel.

More specifically, Defendant challenges the days where Plaintiff's counsel billed in .2 (or greater) increments for each of a series of voice mails between he and a witness or for reviewing several different ECF filings. For example, on September 5, 2006, consecutive entries include the following: ".2 - V.M. from Dr. Maribao re: appearing for trial; .2 - V.M. to Dr. Maribao re: appearing for trial; .2 - V.M. to Dr. Maribao re: appearing for trial." As such, Plaintiff's counsel billed .6 hours for three voice mails that, combined, could not have lasted more than 8 minutes (being very generous), which is equal to .2 hours (again, being generous) and .2 hours is what the Court will award for those three entries.

Defendant also challenges a number of the entries where Plaintiff's counsel billed for tasks that should have been completed by secretaries or clerks, or by mail. Plaintiff's counsel argues that, in order to ensure that matters were handled properly or because the tasks were completed after hours or on the weekend, he handled the matters himself. Although Plaintiff's counsel has the right to undertake any and all tasks associated with the case (and may even be wise to do so, in some instances), the Court agrees with Defendant that there are numerous occasions where billing at an attorney rate is not reasonable. For example, Plaintiff's counsel charged 1.5 hours for "Personally travel to/from court to file complaint and civil cover sheet, and to obtain executed summonses." Short of filing an emergency motion for injunctive relief, this is a task that should not be billed at the rate of an attorney. The same generally is true for filing documents via ECF. The Court agrees with Plaintiff's counsel that the attorney is ultimately responsible for what is filed, however, the filing itself is a clerical task. The substance of the filing is what the attorney is responsible for and is the work which reasonably can be awarded as attorney fees by this Court. Similarly, there are many instances of Plaintiff's counsel spending far too much time reviewing ECF filings, particularly when a separate entry is made for each ECF filing received. Simply put, there are many days where

related events should have been aggregated and not billed separately. The Court concludes that it would not be reasonable to award Plaintiff (and charge Defendant) attorney fees for such entries.

In evaluating Plaintiff's Motion for Attorney Fees, the Court has reviewed every entry by Plaintiff's counsel from February 21, 2005 through September 29, 2006, and now makes the following reductions in time:

1. June 14, 2005 - reduce time for filing by 1.0

2. June 21, 2005 - reduce time for ECF filing/review by .2

3. June 23, 2005 - reduce time for ECF filing/review by .3

4. July 1, 2005 - reduce time for reviewing ECF filings/identical documents by .6

5. July 27, 2005 - reduce time for reviewing ECF filings/identical documents by .2

6. Sept. 8, 2005 - reduce time for reviewing ECF filings/identical documents by .2

7. January 4, 2006 - reduce time for reviewing ECF filings/identical documents by .2

8. January 9, 2006 - reduce time for reviewing related documents (but billing separately even though one document is a single page requiring less than 2 minutes to review) by .2

9. January 10, 2006 - reduce time for voicemail/phone call with Rose Barrett by .1

10. January 17, 2006 - reduce time for reviewing related documents (but billing separately even though one document is a single page requiring less than 2 minutes to review) by .2

11. January 19, 2006 - reduce time for reviewing related documents (but billing separately even though one document is a single page requiring less than 2 minutes to review) by .4

12. January 30, 2006 - reduce time for voicemail/phone call with client by .1

13. January 31, 2006 - reduce time for voicemail/phone call with Dr. Maribao by .1

14. February 6, 2006 - reduce time for exchange of voice mails by .2

15. February 8, 2006 - reduce time for reviewing related documents (but billing separately even though one document is a single page requiring less than 2 minutes to review) by .2

16. February 20, 2006 - reduce time for reviewing related documents (but billing separately) by .3

17. February 22, 2006 - reduce time for reviewing related documents (but billing

separately even though one document is a single page requiring less than 2 minutes to review) by .2

18. February 27, 2006 - reduce time for ECF filing/review by .2

19. March 10, 2006 - reduce time for ECF review by .2 (review of this document takes less than 30 seconds and the only thing that needs to be reviewed is the substantive document)

20. June 8, 2006 - reduce time for ECF review by .2 (review of this document takes less than 30 seconds and the only thing that needs to be reviewed is the substantive document)

21. June 26, 2006 - reduce time for ECF review by .2 (review of this document takes less than 30 seconds and the only thing that needs to be reviewed is the substantive document)

22. June 27, 2006 - reduce time for ECF review by .2 (review of this document takes less than 30 seconds and the only thing that needs to be reviewed is the substantive document)

23. June 29, 2006 - reduce time for ECF review by .2 (review of this document takes less than 30 seconds and the only thing that needs to be reviewed is the substantive document)

24. June 30, 2006 - reduce time for ECF review by .4 (review of these documents takes less than 30 seconds each and the only thing that needed to be reviewed were the substantive documents)

25. September 5, 2006 - reduce time for voicemail exchange with Dr. Maribao by .4

26. September 8, 2006 - reduce time for voicemail/call from court re: jury selection (.2) and for reviewing related documents (but billing separately even though each of the many of the documents were single pages requiring less than 2 minutes to review) (.4)

27. September 10, 2006 - reduce time for non-attorney function by 1.4

28. September 11, 2006 - reduce time for ECF filings review by .4

29. September 14, 2006 - reduce time for ECF filings review by .4

30. September 15, 2006 - reduce time for ECF filings review by .4

31. September 18, 2006 - reduce time for ECF filings review by .2

32. September 29, 2006 - reduce time for ECF filings review by .2

Accordingly, the Court reduces the hours claimed by Plaintiff by 10.3, from 282.4 to 272.1.

    5.    *Calculated Fee Award*

17

Based on the billed hours reasonably expended by Plaintiff's attorney (272.1) and based on the above determined reasonable billing rate ($170), the Court will award a total of $46,257.00 for attorney fees.

   6.   *Costs*

Defendant objects to Plaintiff's request for $4,713.18 in costs because (a) $789.00 for a deposition transcript is excessive and the cost for a rush transcript was the fault of Plaintiff, (b) $1,400 for a deposition fee for Dr. Maribao is excessive, and (c) Plaintiff did not supply evidence of many of the costs he claimed. The Court finds that the deposition fee for Dr. Maribao was not excessive in light of his experience, the time involved in the deposition and the preparation for the deposition, and the fact that he testified as an expert. Similarly, the need for a rush transcript for Dr. Maribao was the result of Dr. Maribao notifying Plaintiff at the last moment that he would not be available for trial, not because Plaintiff waited until the last minute to obtain the *de bene esse* deposition. Finally, Plaintiff provided documentation of the many costs he claimed when filing his reply brief. Accordingly, the Court awards Plaintiff $4,713.18 in costs.

**C.   Pre-Judgment Interest**

Defendant objects to Plaintiff's request for $7,731.28 in pre-judgment interest because the jury was instructed that if it found Defendant had violated the FMLA, its damage award could include "[t]he interest on the amount [of backpay damages] calculated at the prevailing rate[.]" Defendant argues that it is a reasonable assumption that the jury intended the $45,000 verdict to constitute its entire damage award to Plaintiff from the time of his termination to the date of the verdict.

Plaintiff argues that the Court is required to award pre-judgment interest if the jury verdict form did not include an interrogatory to the jury specifically asking the jury to set forth the amount of pre-judgment interest being awarded. Plaintiff also suggests that it is the duty of the Defendant to ensure the verdict form presented the specific question of pre-judgment interest (and, as such, it is the Defendant who must bear the consequences if it is not included). The Court notes that

18

Plaintiff has offered no binding authority for the foregoing statements. In addition, the Court finds Plaintiff's arguments counter-intuitive. If Plaintiff desired pre-judgment interest (and an instruction to the jury allowed as much), Plaintiff should have made sure that a specific question about pre-judgment interest was on the verdict form and Plaintiff should have told the jury what the appropriate rate was. Accordingly, the Court denies Plaintiff's request for pre-judgment interest.

**D.     Conclusion**

For the foregoing reasons, the Court awards Plaintiff $46,257.00 for attorney fees and $4,713.18 in costs. Plaintiff's request for pre-judgment interest is denied, as is Plaintiff's request for attorney fees related to any work conducted on this case after October 26, 2006. Together with the jury verdict of $45,000, judgment shall be entered in favor of Plaintiff in the amount of $95,970.18.

## VII.  CONCLUSION

Accordingly, and for the reasons set forth above, Defendant's Motion for Judgment as a Matter of Law is DENIED, Defendant's Motion for Stay is DENIED, and Plaintiff's Motion for Attorney Fees and Entry of Judgment is GRANTED IN PART and DENIED IN PART. Judgment shall be entered accordingly.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff  
LAWRENCE P. ZATKOFF  
UNITED STATES DISTRICT JUDGE

Dated:  June 7, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 7, 2007.

s/Marie E. Verlinde  
Case Manager  
(810) 984-3290